IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROL STUKES and PATRICIA WALTON, | : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | No. 05-4065 |
| AFSCME LOCAL 2187 and CATHERINE G. SCOTT, | : | |
| Defendants. | : | |

### MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                            **SEPTEMBER 26, 2007**

Presently before this Court is AFSCME Local 2187's ("Local 2187") and Catherine G. Scott's ("Scott") Motion to Strike the Affidavits of Patricia Walton ("Walton") and Carol Stukes ("Stukes"). Plaintiffs attached these affidavits to their Opposition to Defendants' Motion for Summary Judgment. For the following reasons, Defendants' Motion to Strike the Affidavits is granted in part and denied in part.

**I.     BACKGROUND**

Local 2187 is the exclusive collective bargaining representative for professional, non-supervisory employees of the city of Philadelphia. Prior to October 21, 2003, Walton was the vice president of Local 2187, having been elected initially in 1991, and Stukes was the secretary-treasurer, first elected in 1995. Vice president and secretary-treasurer are roles that are not full time positions within Local 2187. Thus, compensation for these positions is not automatically authorized under the rules of the union. Local 2187's constitution, however, allows the executive board to appoint additional employees as staff representatives, which are full time positions. As

vice president and secretary-treasurer, Walton and Stukes were appointed staff representatives. In order for the Plaintiffs to accept the position of staff representative, they were required to take a leave of absence from their jobs with the city of Philadelphia. Thus, Stukes and Walton were on leave from their employment with the city while they were employed by Local 2187.

On October 29, 2003, Local 2187 voted to elect their union officers. There were two slates of candidates. Stukes ran for president and Walton ran for vice president on one slate, and Scott ran for president on the other. Plaintiffs' slate lost the election. They were thus terminated from their jobs as staff representatives with Local 2187 as they no longer filled officer positions in the union. On December 31, 2003, Plaintiffs returned to their positions with the city, from which they had taken leaves of absence. In this action, Plaintiffs claim that they were terminated by Scott from their staff representatives jobs prior to losing the election. They argue that the election was a cover for terminating them from their positions as staff representatives, which was motivated by their race.

Employees of the city of Philadelphia participate in the city pension plan. Under the plan the employee makes a contribution of 3.75% of their wage rate, and the city makes contributions of 2.25% to the employee's pension account. When the employee takes unpaid leave to serve as a union officer, the city's contribution stops. However, the plan allows city employees who fill the officer roles in Local 2187, to purchase service credits. Through the credits, employees who are not actively working for the city are still able to contribute to their pension plan. Local 2187 is authorized to provide "employer contributions" to the pension plan as well, and as such makes contributions similar to what the city does under its plan. Local 2187 makes its "employer contributions" for union officers through a deferred compensation plan, which allows Local 2187

to provide the contributions under the same tax deferred setup available to the city. Union officers are thus protected from negative tax consequences while they are on leave from their jobs with the city of Philadelphia.

Stukes was the secretary-treasurer of Local 2187 during 2000 to 2003, and while she performed the duties of that role the "employer contributions" made by the union to its officers were calculated erroneously. This resulted in additional tax burdens to the union officers. Upon learning of this, the executive board and its attorney attempted to impose measures to correct the errors. After the election, Stukes and Walton were sent letters by the union's attorney explaining the problem, and their signatures were requested on release forms so that corrective payments could be made. Neither Plaintiff returned the form. Consequently, Stukes' and Walton's accounts could not be fully corrected, and Plaintiffs suffered adverse tax implications. Plaintiffs believe that these negative tax consequences befell them as a result of racial animus.

On July 29, 2005, Plaintiffs filed a Complaint in this Court alleging race and gender discrimination in violation of Title VII of the Civil Rights Act (42 U.S.C. § 2000e-2000e(5)), the Pennsylvania Human Relations Act, (43 P.S. § 951 et seq.), and 42 U.S.C. § 1981. Discovery in this matter closed on March 30, 2007, and on April 30, 2007, Defendants filed a Motion for Summary Judgment that included the depositions of Stukes and Walton as exhibits. On July 5, 2007, Plaintiffs filed their Opposition to the summary judgment motion that included signed affidavits from Stukes and Walton. Defendants filed a Motion to Strike these affidavits on July 19, 2007. The Motion to Strike is at issue in this Memorandum.

## II.   DISCUSSION

This Court will grant Defendants' Motion to Strike the Affidavit of Patricia Walton on

the grounds that it does not comport with the standard set forth by the Third Circuit in Martin v. Merrell Dow Pharm., Inc., 851 F.2d 703, 705-06 (3rd Cir. 1988).  In that case the court was asked whether a district judge had erred in disregarding an affidavit submitted by the plaintiff which contradicted that plaintiff's prior deposition testimony.  The court held that the judge had not erred in excluding the affidavit because the plaintiff had not presented a satisfactory reason for the contradictions presented.  Id. at 706.  "When . . . the affiant [is] carefully questioned on the issue, [has] access to the relevant information at that time, and provide[s] no satisfactory explanation for the later contradiction . . . the subsequent affidavit does not create a genuine issue of material fact[,]" and need not be considered.  Id.

In Martin, the plaintiff had made numerous sworn statements which precluded her from establishing the defendants' liability.  Id. at 704-05.[1]  When faced with the prospect of losing on summary judgment, she submitted an affidavit which clearly contradicted her prior testimony.  Id.  No explanation was given in the affidavit for the contradictions, and her reason provided in the briefs was found to be unsatisfactory.  Id. at 706.  The Third Circuit explained that "the objectives of summary judgment would be seriously impaired if the district court were not free to disregard the conflicting affidavit" when the affiant had not provided a satisfactory explanation for the contradictions between her prior testimony and the affidavit.  Id.  The court added, "If a party who has been examined at length on deposition could raise an issue simply by submitting

---

[1] This Court is aware of two other Third Circuit cases that have addressed when contradicting affidavits can be disregarded.  See Videon Chevrolet, Inc. v. General Motors Corp., 992 F.2d 482 (3d Cir. 1993), and Farrell v. Planters Lifesaver Co., 206 F.3d 271 (3d Cir. 2000).  In Videon, the court held that Martin was inapposite as the plaintiff's testimony was ambiguous.  992 F.2d at 488.  In this case, Walton's testimony is not ambiguous and the rationale in Martin is applicable.  In Farrell, the court limited Martin to instances when the contradiction was in regard to an answer given to a question asked directly in a deposition.  Since Walton's contradiction was in response to a direct question asked at her deposition, it is exactly the type prohibited by Martin.

4

an affidavit contradicting [her] own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Id.

In the present case, Walton has presented an affidavit which contradicts her deposition testimony. At the deposition, Walton testified that Scott had never said anything racially charged to her, but in her affidavit, she gives not less than five statements that she attributes to Scott which she claims were racially charged. In explaining the contradiction, Walton argues that she was instructed by defense counsel, who was asking a direct question about whether Scott ever made any racially charged comments, not to provide an answer in response to his question. Walton's explanation has no merit. The relevant portion of the transcript reads:

> Q: (defense) Did Cathy Scott in that conversation use any words that you consider to be racial?
> A: (Walton) She didn't say what I said. She just said I promised and I didn't keep my promise. She didn't disagree with what I said.
> Q: Did she agree?
> A: She didn't disagree, no.
> Q: Did she agree?
> A: She agreed that I didn't keep my promise
> Q: Did she agree with your comment that she was treating you as the head nigger on the plantation?
> A: No. She didn't say that.
> Q: I didn't think so. Prior to that conversation had Cathy Scott ever said anything to you that you consider to be racially charged?
> A: No; but things that were done were.
> Q: After that conversation, did Cathy Scott ever say anything to you that you consider to be racially charged.
> A: I would say yes, because other things happened.
> Q: ***She said things, I didn't ask about what happened, I asked what she said.***
> A: Not that I can recall at this time, no.

(Def's Mot. to Strike, Ex. A, Walton Dep. at 71-72 (emphasis added).) She argues that the above highlighted statement was an instruction by defense counsel not to answer his question about

what racially charged comments Scott made.  Walton was carefully questioned on what Scott said to her, and answered more than once that Scott made no racially charged comments towards her.  Walton's reason for not providing this testimony is not meritorious, thus, the affidavit will be disregarded from this Court's consideration on Defendant's summary judgment motion.

In regard to the affidavit of Carol Stukes, this Court denies Defendants' Motion to Strike.  Federal Rule of Civil Procedure 56(e) allows the use of affidavits in connection with a summary judgment motion when the affidavit is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant is competent to testify on the matters stated."  All affidavits must be submitted in good faith.  Fed. R. Civ. P. 56(g).  The requirements are mandatory.  Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 10B Federal Practice and Procedure § 2738 (1998).

The signed affidavit of Carol Stukes states that she was the secretary-treasurer of Local 2187 from 1995 until 2003.  (Pl.'s Opp. Ex. B.)  Her affidavit contains facts about what she did in this position in regard to various payments that she made on behalf of Local 2187 to the pension accounts of Walton, Scott, and Stukes.  (Id.)  These statements are clearly made on personal knowledge, and it appears that the facts would be admissible in evidence as they are relevant.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROL STUKES and PATRICIA WALTON, | : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | No. 05-4065 |
| AFSCME LOCAL 2187 and CATHERINE G. SCOTT, | : | |
| Defendants. | : | |

**ORDER**

**AND NOW**, this 26th day of September, 2007, upon consideration of Defendants' Motion to Strike the Affidavits of Stukes and Walton (Doc. No. 36), and the response thereto, it is hereby **ORDERED** that the Motion is **GRANTED** with respect to the Affidavit of Patricia Walton, but **DENIED** in regard to the Affidavit offered by Carol Stukes.

BY THE COURT:

/s/ Robert F. Kelly
ROBERT F. KELLY
SENIOR JUDGE